Peter F. AMBROSE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10171.

Court of Appeals of Alaska.

Dec. 18, 2009.

Thomas I. Temple, Law Offices of William R. Satterberg, Jr., Fairbanks, for the Appellant.

Eric A. Ringsmuth, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

BOLGER, Judge.

Peter F. Ambrose argues that he was subject to an unreasonable search when a trooper removed and opened a bindle of cocaine from Ambrose's shirt pocket following his arrest. We conclude that the trooper was authorized to remove the object from Am-

brose's pocket because, based on its size and feel, the trooper reasonably believed that it could contain a razor blade. After removing the object from Ambrose's pocket, the trooper was authorized to open it because he immediately recognized that it was a bindle—that is, a single-purpose container used to carry illegal drugs.

## Background

On May 25, 2006, at about 3:50 p.m., Alaska State Trooper Nicholas Zito observed Ambrose driving a vehicle without a rear bumper. Trooper Zito initiated a traffic stop and then conducted an APSIN check, which revealed that Ambrose was a convicted sex offender who was not in compliance with his registration requirements. Trooper Zito arrested Ambrose, placed him in handcuffs, and then conducted a search incident to the arrest.

During the pat-down search, Trooper Zito felt a small, rectangular object in Ambrose's left front shirt pocket. Removing the object, Zito discovered a rectangular folded piece of newspaper. Zito opened the paper, revealing a white powdery substance. Zito asked Ambrose if the powder was methamphetamine and Ambrose replied that it was cocaine, which the trooper confirmed through a field test.

Ambrose was charged with fourth-degree misconduct involving a controlled substance [1] and failure to register as a sex offender.[2] Ambrose moved to suppress the evidence of the cocaine, arguing that Trooper Zito's warrantless search exceeded the permissible bounds of a search incident to arrest. At the hearing on the motion, Zito testified that he thought that the object he felt through Ambrose's shirt pocket could be something that Ambrose could use to harm him or that it could be some type of drug paraphernalia. Zito testified that the object could have contained a razor blade.

Superior Court Judge Douglas L. Blankenship pointed out that Ambrose was handcuffed at the time of the search, and asked Trooper Zito why he was concerned about Ambrose's ability to use a weapon. Zito responded that he feared that Ambrose might access the weapon inside the correctional center or the patrol car. Zito also testified that after he removed the object from Ambrose's pocket he immediately recognized that the object was a bindle, a package commonly used to carry illegal substances.

The judge denied Ambrose's motion to suppress, ruling that Trooper Zito's removal of the package from Ambrose's pocket was permissible based upon the trooper's reasonable belief that the package might contain a weapon. Judge Blankenship also concluded that Zito was justified in opening the package, based on this court's opinion in *Dunn v. State*.[3]

The charge of failing to register was dismissed pursuant to a pretrial ruling, and Ambrose was convicted of misconduct involving a controlled substance in the fourth degree. Ambrose now appeals.

## Discussion

▆▆▆ On appeal, Ambrose argues that the trial court erred in denying his motion to suppress. When we review a ruling on a motion to suppress, we review the record in the light most favorable to the trial court's ruling.[4] We will not disturb the trial court's findings of fact unless they are clearly erroneous.[5] We use our independent judgment to decide whether the trial court's factual findings support its legal conclusions.[6]

*Trooper Zito Could Remove the Object From Ambrose's Pocket During a Search for Weapons Incident to Arrest*

Ambrose first argues that Trooper Zito exceeded the allowable scope of the pat-down search when he removed the object from

1. AS 11.71.040(a)(3)(A).

2. AS 11.56.840(a).

3. 653 P.2d 1071 (Alaska App.1982).

4. *State v. Wagar*, 79 P.3d 644, 650 (Alaska 2003).

5. *Id.*

6. *Id.*

Ambrose's pocket. Specifically, Ambrose argues that Zito offered insufficient reasons to support removing the object, because the trooper only testified that he thought the object could contain a weapon, such as a razor blade, but he did not state any articulable facts to support a belief that the object actually contained a weapon.

■ Trooper Zito's search was incident to Ambrose's arrest for failure to register as a sex offender. A search incident to arrest must be limited to a search for evidence of the crime for which the person is arrested or for any weapons the arrestee might use to resist arrest or effect his escape.[7]

■ In *State v. Wagar*, the Alaska Supreme Court rejected the rule that an officer conducting a pat-down search pursuant to an investigative stop may remove an object only if the officer has reasonable and articulable facts to support the belief that the object was a weapon, and held that an officer may remove an object from a suspect's pocket if the officer reasonably believes that the object could be used as a weapon.[8] Investigative stops are considered minimally intrusive,[9] and, when compared to a search incident to arrest, are of a more limited duration. Consequently, it follows that an arresting officer may conduct a search incident to arrest that is at least as intrusive as the pat-down authorized in *Wagar*. Thus, an arresting officer may remove an object from the arrestee's pocket during a search incident to arrest if the officer reasonably believes that the object might be used as a weapon.

■ In the present case, Judge Blankenship found that Trooper Zito reasonably believed that the object in Ambrose's pocket could have contained a weapon. This finding was based on "specific and articulable

facts."[10] Zito testified that he believed that the object could have contained a razor blade. The judge also had the opportunity to personally handle the object because it was admitted into evidence at the hearing. (Photographs of the object have been included in the record on appeal.) Taking this evidence into consideration, Judge Blankenship could reasonably conclude that Trooper Zito had a reasonable belief that the object he removed from Ambrose's pocket could have contained a weapon.

*Trooper Zito Could Open the Bindle Because He Immediately Recognized That It Was a Container for Illegal Drugs*

Ambrose's second argument is that once Zito removed the object, he was not permitted to open the object without a search warrant unless the object reasonably could have contained a weapon or evidence of the crime for which Ambrose was arrested. But Zito testified that once he removed the object, it appeared to be a bindle, a package that individuals use to carry illegal drugs.

As noted above, Judge Blankenship concluded that Trooper Zito's decision to open the bindle he took from Ambrose's pocket was based on our decision in *Dunn v. State*, which allows an officer to open any containers found on the arrestee's person incident to arrest if the container could reasonably be believed to contain a weapon or evidence of the crime for which the arrest was made.[11] But we choose to affirm Judge Blankenship's ruling on alternate grounds.[12] Our conclusion is based on the line of cases holding that an officer may open a package in plain view if it is immediately apparent that the package is a single-purpose container used to carry

---

7. *Jackson v. State*, 791 P.2d 1023, 1024 (Alaska App.1990) (citing *McCoy v. State*, 491 P.2d 127, 138 (Alaska 1971)); *see also Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969).

8. *Wagar*, 79 P.3d at 648–50; *see Albers v. State*, 93 P.3d 473, 475 (Alaska App.2004).

9. *State v. G.B.*, 769 P.2d 452, 456 (Alaska App. 1989).

10. *See Wagar*, 79 P.3d at 649.

11. *Dunn*, 653 P.2d at 1082.

12. *See McGee v. State*, 614 P.2d 800, 805–06 n. 10 (Alaska 1980) (explaining that an appellate court may affirm a trial court decision on any grounds); *Pruitt v. State*, 829 P.2d 1197, 1199 n. 1 (Alaska App.1992) (explaining that an appellate court can affirm a trial court decision on alternative grounds).

illegal drugs.[13]

For example, in *McGuire v. State,* a trooper felt what he believed to be a plastic bag inside McGuire's pant pocket during a patdown search for weapons following a reported bar fight.[14] The trooper asked McGuire what he had in his pocket, and McGuire responded that it was marijuana.[15] Removing the baggie, the trooper saw that it contained several bindles, and the contents of the bindles ultimately field-tested positive for cocaine.[16] We concluded that the trooper was justified in seizing and opening the bindles because he was certain that the bindles contained illegal drugs: "Once [the trooper] removed the baggie ... and could see for himself that it contained bindles, [the trooper] could lawfully open [those] bindles and examine their contents." [17]

■ In the present case, Trooper Zito testified that he immediately recognized the object he removed from Ambrose's pocket as a bindle, which is a single-purpose package used to carry illegal drugs. Accordingly, the trooper was justified in opening the bindle and discovering the cocaine.

### Conclusion

Trooper Zito was authorized to remove the object from Ambrose's pocket because the trooper reasonably believed that the object could contain a razor blade. After removing the object from Ambrose's pocket, the trooper was authorized to open it because he immediately recognized that it was a bindle, a single-purpose package used to carry illegal drugs. We therefore AFFIRM the superior court's judgment.

---

13. *See, e.g., Reeves v. State,* 599 P.2d 727, 738–39 (Alaska 1979); *Schraff v. State,* 544 P.2d 834, 847 (Alaska 1975); *Howard v. State,* 209 P.3d 1044, 1050 (Alaska App.2009); *McGuire v. State,* 70 P.3d 1114, 1116–17 (Alaska App.2003); *Newhall v. State,* 843 P.2d 1254, 1259 (Alaska App.1992); *Brown v. State,* 809 P.2d 421, 423 (Alaska App. 1991).

14. *McGuire,* 70 P.3d at 1115.

15. *Id.*

16. *Id.*

17. *Id.* at 1117 (citing *Schraff,* 544 P.2d at 847).